CHRISTOPHER C. COOKE (SBN 142342)
MURPHY COOKE KOBRICK LLP
177 Bovet Road, Suite 600
San Mateo, CA 94402
Email: ccooke@mckllp.co,
Tel: (650) 638-2370
Fax: (650) 350-4333

Attorneys for Defendants
STEVEN L. MYERS and MYERS
ENGINEERING INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES R. JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN L. MYERS, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B) (DIVERSITY JURISDICTION) |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT defendants Steven L. Myers (Myers") and Myers Engineering International, Inc. ("MEI") hereby remove to this Court the state court action described below.

1. On February 21, 2017, an action was commenced in the Superior Court of the State of California, San Mateo County, entitled James R. Johnson, Plaintiff, vs. Steven L. Myers, et al., Case No. 17CIV00754. A copy of this complaint and all pleadings papers served on Defendant Myers in this action are attached hereto as Exhibit A.

2. The first date on which defendant Steven L. Myers received a copy of the complaint and summons was March 20, 2017, when Myers was served with the summons, complaint and other documents in Exhibit A.

3. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to this Court by defendants Myers and MEI pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because plaintiff James R. Johnson, in both this state court action and in the prior lawsuit filed in this Court over the same alleged conduct, known as Johnson et al. v. Myers, et al., Case No. 3:11-CV-00092 WHA, alleged that the Antenna Technology in dispute in both cases is worth "in excess of $75,000" (Federal Complaint Case No. 11-CV-00092, paragraph 31) and, in the removed state court action, plaintiff Johnson alleges that he seeks "valuation of Assets to return to third party pre-damaged days of $5,000,000" (State Complaint, Case 17CIV00754 at Prayer, paragraph 2 at pg. 13).

4. Complete diversity of citizenship exists in that: plaintiff, James R. Johnson is a citizen of the State of California and defendants Myers and MEI are both citizens of the State of Florida. MEI is a corporation organized under Florida law with its principal place of business in Florida. Based upon a review of the register of actions in the San Mateo County Superior Court, Myers and MEI are the only defendants who have been served with summons and complaint in this action.

5. In addition, the citizenship of purported defendant Myers Johnson, Inc. ("MJI"), which is alleged to be a California corporation based in California, should be disregarded on the ground of fraudulent joinder and realignment of parties.

6. Defendants allege that MJI is fraudulent joined as a defendant because

a. MJI was suspended in 2007 by the California Franchise Tax Board for failing to pay taxes and has no operations;

b. although plaintiff alleges that this action purports to seek to quiet title as to assets of MJI, and to seek declaratory relief for its shareholders and creditors as to the ownership of MJI's assets and whether defendants breached any fiduciary or other obligations to it, in the prior Federal Court action, plaintiff alleged that "[i]n 2005, the shareholders of MJI entered into a Stock Purchase Agreement .. . with [Vortis Technology Ltd.] whereby VTL purchased all of the stock of

MJI . . . VTL and thus its shareholders, also became the owner of all other assets of MJI." (Federal Complaint, Case No. 3:11-CV-00092 WHA, paragraph 16). Moreover, Plaintiff's purported third cause of action in the State Court Complaining concerning MJI, based on California Corporations Code Section 8273, is wholly frivolous. That provision of the Corporations Code concerns non-profit corporations that have been dissolved. MJI is neither a non-profit corporation nor a dissolved corporation. Thus, based on plaintiff's own allegations, there are no assets or shareholders of MJI for which any relief can be sought in any court and no causes of action stated against MJI. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citizenship of a non-diverse defendant may be disregarded when no possible cause of action has been stated against defendant).

7. In addition, defendants Myers and MEI allege MJI's status as a defendant should be disregarded and that the Court should re-align it as a plaintiff. Plaintiff Johnson alleges that he is MJI's chairman and sole officer and is purporting to represent MJI's interests in this action by seeking assets for it and by dissolving it.

Dated: April 18, 2017.

Respectfully Submitted.

MURPHY COOKE KOBRICK LLP

By: /s/ ________________________

Christopher C. Cooke
ATTORNEYS FOR DEFENDANTS
STEVEN L. MYERS AND MYERS
ENGINEERING INTERNATIONAL INC.

# EXHIBIT A TO NOTICE OF REMOVAL

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED FILED
SAN MATEO COUNTY
FEB 2 1 2017
Clerk of the Superior Court
By Rebecca Krill
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
Steven L. Myers, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
James R. Johnson, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Mateo County Superior Court
400 County Center
Redwood City, CA 94063

CASE NUMBER: *(Número del Caso):* 17 C I V 0 0 7 5 4

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles J. Smiht, Esq. 777 Marshall St. Redwood City, CA 94063

DATE: *(Fecha)* FEB 2 1 2017 February 21, 2017 RODINA M. CATALANO Clerk, by *(Secretario)* R. KRILL, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [ ] on behalf of *(specify)*:
   under: [ ] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Charles J. Smith (SBN 72700)
777 Marshall Street
Redwood City, CA 94063
Phone: (650) 568-2825
Fax: (650) 568-2823 (fax)
Email: smith@hslawoffice.com

Attorney for Plaintiff
JAMES R. JOHNSON, an individual

ENDORSED FILED
SAN MATEO COUNTY

FEB 21 2017

Clerk of the Superior Court
By Rebecca Krill
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| JAMES R. JOHNSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN L. MYERS, an individual dba MYERS ENGINEERING INTERNATIONAL, INC., a business entity believed to be incorporated; STEPHEN A. BURKE, an individual; VORTIS TECHNOLOGY, LTD., a corporation duly organized under the laws of Great Britain; MYERS JOHNSON INC., a California Corporation and DOES 1-50,<br><br>Defendants. | CASE NO. 17CIV00754<br><br>**COMPLAINT FOR QUIET TITLE, DECLARATORY RELIEF; DISSOLUTION AND DISTRIBUTION OF ASSETS AND INJUNCTIVE RELIEF** |

Plaintiff JAMES R. JOHNSON ("JOHNSON"), by and through his attorney, alleges the following against Defendants STEVEN L. MYERS ("MYERS") dba MYERS ENGINEERING INTERNATIONAL, INC. ("MYERS ENGINEERING"); STEPHEN A. BURKE ("BURKE"); FORMER MANAGING DIRECTOR; VORTIS TECHNOLOGY, LTD. ("VTL"); MYERS JOHNSON INC., ("MJI"); and DOES 1 through 50, on information and belief formed after reasonable inquiry under the circumstances:

## I. **THE PARTIES**

1. Plaintiff JAMES R. JOHNSON is an individual residing in the County of San Mateo and remaining Chairman of the Board and founder of MJI seeking this corrective action.

2. Plaintiff Johnson is 1 of 39 former shareholders of MJI seeking corrective action for the true records and to remove colored chain of title claims in order to move forward.

3. JOHNSON is founder, developer, author, fund raiser and leader of the invention [Johnson Patent] which is based on his prior work in 1968, 1976, 1978, 1990, 1993, 1996, 1999; events.

4. Defendant MYERS JOHNSON, INC. (MJI) is a C-Type corporation organized under the laws of the State of California with its principal place of business in San Carlos, California, C2362567, Date Filed 10/17/2001. This is in the offices of the accountancy and lawyer.

5. JOHNSON and MJI hold the knowledge and intellectual know how with team and system to launch and is presently being held back by MYER's clouded claims.

6. MJI is suspended for failure to meet statutory filing requirements including taxes. This action seeks to correct this matter and properly pay off and close financial accounts and intellectual property rights by dissolving MJI after addressing clouded title.

7. MJI is a Silicon Valley born firm and holder of three assets defined as 1) Vortis Brand/trademark, 2) Laird/Centurion, US Patent # 6,031,495 (a Low Specific Absorption Rate Patent) and 3) Johnson, Patent US Patent # 6,844,854 (Interferometric Antenna Array).

8. The Johnson Patent was developed to help his mother (Francis Willadean Colby) and 55 million other seniors hear better on cell phones. JOHNSON's work was named in a U.S. F.C.C. Report and Order that later changed the way cell phone antennas are launched.

9. JOHNSON's work with Nokia's first embedded cell phone antenna led to patent grant under

the direction of Choate, Hall and Stewart and John Hamilton who led the support with the FCC and regulations. JOHNSON knew this 100 year old law firm from his 1990 work.

10. Defendant MYERS is an individual residing in Fort Lauderdale in Broward County, Florida. MYERS is an engineer, PhD who studies discontinuities to exploit to improve antennas in a reiterative empirical optimization process taking input from others and exploiting all ideas.

11. MYERS' concepts were built on his prior arts and JOHNSON's integration leadership.

12. JOHNSON tested early models of MYERS work with Third Party Testing & Validation Reports from Mark Sanford, board member and a national hearing technology advisor who organized a 43 hearing aid test (learned later to be the largest in the U.S. as reported) and with Florida Atlantic University who confirmed the null, and compliance certification labs for SAR (Near Field) (RangeStar) and others, such as TEM testing (Stephen Berger) HAC Test to near field probes, JOHNSON's collaborations discovered all of MYERS' failure modes; to help.

13. These parties became development partners, providing JOHNSON with the necessary path!

14. Vortis Technologies Limited had 27 Unsecured Creditor Balances - As at 23rd May 2007:

15. MJI's three assets are clouded in an attempted fraudulent transfer by BURKE/MYERS. As such, upon information and belief, JOHNSON alleges fraud as defined under Uniform Fraudulent Transfer Act (California Civil Code Section 3439 thru 3439.12) UFTA and measured under the Courts "Badges of Fraud" [Ref: Exhibit 2, Badges of Fraud].

16. Attempts by Shareholders to learn of Defendant's legal authority for certain trades go unaddressed and upon filing a law suit in U.S. District Court, Defendant flees from discovery.

17. Assets are colored "transferred" by way of a Scottish Liquidation Sale (Asset Transfer).

18. No such transfer has factually taken place under California Secretary of State though MYERS makes public claims along with defamations and other statements.

19. JOHNSON built a global position from his regulatory work on Vortis brand leading industry and even Motorola's advanced R&D Antenna Group to engage in tests and discovery.

20. MYERS runs his own business, Myers Engineering International, Inc., a small garage shop antenna maker who agreed to contribute his circuit board

21. JOHNSON discovered that MYERS' circuit board, [one of many solutions] is just a Rat

Race Circuit Design. However, MYERS is the contributing designer to this 1.5" by 3" printed circuit board. Myers also contributed some technical writing and formulas (partially) for JOHNSON's Patent. MYERS circuit enables Johnson's patent but is not the only solution known to the arts.

22. It takes an extraordinary integration (installation) process to make an antenna valued.

23. MYERS's work began in 2001 to design his circuit as Johnson led integration designs. MYERS was not much involved until contracted by the Board to be Chief Executive Officer ("CEO") of MJI that began in January, 2007 until he voluntarily resigned and/or abandoned employment and terminated his relationship with MJI circa 2008/2009.

24. It was learned in Scottish/English Field Tests that Vortis improved performance, saves energy and in certain areas, clarifies signal and improves coverage. Value sky rocketed!

25. JOHNSON's business model was "Vortis Inside" as in "Intel Inside" licensing technology.

26. MYERS now claim "he bought assets fair and square; from Scotland" but fails to explain how the firm became insolvent. MYERS flees from discovery and deposition on this question.

27. Defendant BURKE, upon information and belief, resides at Coolbanagher Castle outside of Dublin, Ireland. BURKE was the legal Managing Director of Vortis Technology Ltd.

28. Upon information and belief, BURKE was, an executive sales member of Tyco Electronics International Ltd., who was hired at the time to bring Tyco to help as a turn key supplier. BURKE, thru Tyco's executive management, personally arranged a £100 ($180,000) line of credit and agreed to develop VORTIS to as high a value as $75 million.

29. BURKE is accused of delivering false and misleading statements to U.S. Shareholders in his Statement of Affairs in fabricating MYERS' 15.24% equity to look like legal debt; secretly.

30. Vortis Technology Ltd., (VTL) a Registered Number SC 277046 having opened office location in Dundas and Wilson, 4th Floor, Saltire Court, 20 Castle Terrace, Edinburgh, EH1 2EN and subsequently changed to 13 Lyndoch Crescent, Glasgow 3G 6EQ, was formed under MJI Resolution to set up under the well-defined and executed business plan.

31. The Scottish Ltd. Firm, VTL was owned 100% by MJI's former shareholders and MJI's assets were separate and legally control under MJI's Board of Directors.

32. Strangely, after working with MYERS, BURKE cancelled Tyco's U.S. Competitor [Ref: Witness In-Tech Inc.] disrupting years of relationship building at the ready.

33. BURKE and MYERS appeared to have instigated a backroom deal to force insolvency based on claims of dire.

34. At the time of the hostile take-over attempt, both JOHNSON and MYERS contributed their time and money as recorded and accepted JOHNSON 38% MYERS earned 15.24%.

35. BURKE and MYERS actions were discovered in the U.S. District Court Records.

36. This action seeks declaratory relief that the purported secret plan was cause of insolvency.

37. Three assets are the basis of a cell phone industry entry into new antenna ideas for senior citizens

38. Willa's and other investors and suppliers around the world contributed cash, labor, ideas, services, etc. and felt secured by these three assets.

39. Johnson, et al sued MYERS in U.S. District Court who ruled the matter "Internal Affairs."

40. MYERS falsely claimed in USDC Court that MJI does not exist and all assets went to Scotland. MYERS claimed to the Scottish Insolvency Tribunal that he owned Vortis Technology.

41. MJI licensed its technology to VTL under a Grant from the English Crown that would be administered by Scottish Enterprises, under a UK Trade and Industry Innovator Program. Scottish Enterprise 7% investment for £100,000 ($180,000) set the value at £1,428,571 ($2,671,428) while total investments of capital, promises and liabilities were collectively around $2,853,662. Two additional investors placed $100,000 each for equal value and board seats on MJI. Lines of credits and a technology road map followed.

42. Vortis Rights were properly assigned to VTL by Solicitors Dundas and Wilson, London as confirmed by Caroline Andresier, Dundas and Wilson May 03, 2013, VTL's London Law Firm.

43. JOHNSON led the program as personal guarantor of the £100,000 Crown's Grant offered by UK Trade and Investments. The agreed team was led by MYERS, BURKE in order to implement plans as approved. Operational loans and a line of credit for up to £300,000 by Halifax Bank of Scotland (HBOS) was given to JOHNSON to open a new antenna business and produce up to 100 regional jobs in the local supply base of engineers and employees around Glasgow,

Scotland, selected for its role in Maxwell's Equations. Initial arrangement fee of 1% (£1000) to the HBoS and a 2% premium payable to the Department of Trade and Industry (DTI) upon acceptance plus legal expenses going into the deal was over $110,000. The DTI guarantee was for 75% of the outstanding balance.

44. HBoS owned a security instrument "Bond & Floating Charge" against the IP with a balance of £150,000 plus an assignation of the Life Insurance Policy required for JOHNSON. BURKE agreed to care for the banking and pay the bills but he changed his mind. Payments of £2,211.73 ($4136) per month were let slide without notice until BURKE could announce "loan is in arrears."

45. Oddly, at time of close there was quiet a lot of credit left in HBOS line of credit as it had been used only 26% and they had already financed new releases and payments as expected expenses. Even as one Vodafone Account changed, HBOS was helpful and funding?

46. MYERS claims he purchase these assets in Scotland. This is untrue; he purchased stock.

47. JOHNSON seeks a declaratory judgment to void a wrongful trade purported to transfer assets.

48. Even if a California Court recognized the Scottish Fraud and grants MYERS passage into dissolution and distribution of assets, MYERS would need to address the two classes of tradesmen who invested in MJI and saw its parent dissolve. This amounts to $327,321.01.

49. Upon information and belief both BURKE and MYERS have abandoned MJI, while JOHNSON has, as Chairman, undergone extensive investigations into root cause of this Scottish Deal's liquidation. As MJI as a U.S. Historical Treasure [Brand] as recognized by Silicon Valley's leaders in IEEE Global Humanitarian Technologies.

50. JOHNSON is unaware of the true names of Defendants DOES 1 through 50, and of the facts establishing the liability of said DOE Defendants to VTL or MJI. JOHNSON sues said DOE Defendants by said fictitious names, and will amend this Complaint when it ascertains their true names and capacities and/or when it ascertains such facts pertaining to their liability, or as the Court and/or applicable law permits or provides.

51. Upon information and belief, at all times relevant to the subject matter of this action all of

the Defendants, and each of them, acted as the agents and/or employees of each of the remaining Defendants, and at all times acted within the purpose and scope of such agency and employment, and in doing the things alleged each Defendant authorized and/or ratified the conduct of each of the other Defendants.

## II. JURISDICTION AND VENUE

52. The purpose of this quiet title action is to finally settle and determine, as between parties, all conflicting claims to property in controversy and to decree to each party whatever interest or estate in it party is entitled to.

53. Chain of title, proper valuation and distribution is resolved only by California State Law as ordered under U.S. District Court Rulings.

54. This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

55. The matter is properly filed within the Unlimited Jurisdiction of the Court in that JOHNSON seeks Injunctive Relief, which is beyond the jurisdiction of a Court of Limited Jurisdiction; and, (2) the amount in controversy exceeds $25,000.00.

56. The County of San Mateo is the proper venue for the matter because JOHNSON resides now in this County and MJI is now headquartered in this County and Defendants, or their agents, engaged in some or all of the unlawful conduct in this County. NOTE: MJI's Lawyer's Office was burglarized (during lunch) and only Vortis Files disturbed with a San Carlos Crime Report.

## III. FACTUAL BACKGROUND

57. **An actual controversy** has arisen and now exists relating to the rights and duties of the parties herein in that plaintiff contends that Claims to MJI's assets are factually disputed, and/or voidable and/or an extension of a Scottish crime to be executed in California.

58. Title to three assets inside MJI are clouded with Defendant MYERS owning color of title (claiming a purchase from a Scottish Insolvency that he caused).

59. Viewing and triangulating Scottish Claims and actions in USDC reflects all details, allegations and evidence as discovered by JOHNSON's investigations. MYERS reasoning for

alleged fraud is commercial protection from bad management, no markets, no customers, no money, malfeasance, bribery and other claims (mired in MYERS). In the U.S., such excuses are no cause for fraud [*Monty v. Leis* 193 Cal. App. 4th 1367 (2011):

60. MYERS claimed in his wrongful trade that his investment was worth $832,771 (15.24% equity) reflecting a value of $5,475,154. This is triangulated by third party auditors giving JOHNSON's books certification of accuracy.

61. JOHNSON and Shareholders owned 84.76% equity valuing their holdings at $4,640,740.

62. BURKE can stipulate that he secretly offered to buy back MYERS' stock.

63. MYERS can stipulate trading value at $5,475,154 in determining baseline damages.

64. Claims seeking stipulations and or judicial determination are:

1. VTL was not insolvent as BURKE/MYERS claimed falsely; as glass is half empty.
2. BURKE/MYERS's intentions, by their declarations were/are the root cause insolvency.
3. BURKE/MYERS wrongful trade to cause insolvency was not transparent or proper.
4. Myers lawyer's USDC falsely claimed MJI was dissolved and assets moved to Scotland.
5. Disputes between owners/partners are not cause for insolvency; but cause to quit or sue.
6. BURKE/MYERS false witness of root cause and insolvency is unfair trade and perjury.
7. JOHNSON is Chairman of the Board with full legal rights and authority to prosecute.
8. Myers claims Scottish IPR was Vortis Patent owned two assets: a license and MJI Stock.
9. MJI owns three assets (inside MJI) from a California Law ordered by USDC perspective.
10. MJI's shares purchased under questionable terms is a voidable purchase if illegal.
11. California's Internal Affairs Laws was ordered for Control & Distribution of MJI's Assets.
13. BURKE was the strawman in MYERS "same seller / same buyer" process.
14. California Law protects stockholders from pre-insolvency reorganizations and perjury.
15. MYERS flees from deposition and discovery about why such trade was secret to partners?

65. Plaintiff seeks declaratory action to identify that the third MJI Asset, the 854 (Johnson) Patent can further be broken down into two elements: 1) JOHNSON's use of controlled nulls and 2) Myers' Rat Race Circuit Board known to the arts. 1) JOHNSON's connection to this patent comes from his 1968 USAF/SAC Nuclear Armament work nullifying electromagnetic flux valves

that improve accuracy in navigation. 2) Myers Rat Race Circuit borne from JOHNSON's ideas as guided by MJI's investments.

66. Plaintiff seeks quiet title to the property, against all adverse claims of all claimants, known and unknown toward freedom to operate by clearing "mired of MYERS."

67. Upon information and belief Defendant BURKE/MYERS had 100% responsibility for their actions after failing to quit. BURKE, therefore is an alleged crook and co-conspirer.

68. Upon information and belief MYERS and BURKE falsely claimed zero value as creditor leaders; shortly after swapping stock to flip capitalization upside down.

69. Upon information and belief, Defendant BURKE delivered an unsigned Statement of Affairs to the Insolvency Administrator (Scottish Courts) that was not disclosed after attempting to extort owners by claiming "things are dire." Evidence was sent by Scottish and English friends.

70. Evidence connects BURKE's Secret Offer [Shareholders all claimed BURKE made no similar offer or disclosure] to MYERS' Acceptance [point of MYERS' BETRAYAL] as evidenced by his alleged perjured Creditor's Claims Report. This was a wrongful trade and false witness appearing to be criminal conspiracy to defraud a group of investors, the Crown, HBOS and Plaintiff by tricking the Insolvency's administrator VTL was in "dire straits."

71. BURKE owned a fiduciary duty as a matter of law, and a duty of undivided loyalty; not conflict of interest as pointed out in JOHNSON's Trial Lawyer's Opinion.

72. MYERS and BURKE breached fiduciary duties and care of duty.

73. Under any uniform bankruptcy or insolvency act, a proper description of assets is fundamental. However, plaintiff alleges that the legal actions in Scotland are a nullity and 1) no stock was transferred, and 2) Burke operated well under conflict of interests with Tyco and VTL.

74. USDC Judge Fogel's 18 page opinion stated: "After initiating the liquidation proceeding, Myers and Burke represented in financial documents that the value of the Technology was "uncertain;" that VTL was approximately £1.811 million in debt; that VTL's largest creditor was MEI [MYERS' alter Ego] a Florida corporation that Myers solely or principally owns; and that VTL' second-largest creditor was Myers himself." Judge Fogel of USDC #1 stated: "During the liquidation proceedings, Myers arranged for a "sealed and essentially secret" auction to sell the

Technology. The auction was not well-publicized, and there was no official or qualified appraisal of the value of the Technology before the auction. MYERS or BURKE instructed the joint liquidators to accept Myers and Myers Engineering International Inc.'s offer of £12,000 for the Scottish Vortis Technology. Neither JOHNSON nor shareholders were given fair treatment.

**A. Assets Chain of Title**

75. Assets inside of MJI have not been transferred according to California records and law.

76. Plaintiff and other former MJI stockholders continue to own rights and hold majority vote for ordering dissolution and distribution of assets under fair market value.

77. As title of Vortis Brand and relevant intellectual property is in JOHNSON's hands, a quiet title judgment can be granted which can be recorded to provide legal "good title."

78. Under 318.183 [3] [a], a foreign judgement is not conclusive if the judgement was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.

79. BURKE/MYERS fabricated cause of insolvency disguised their wrongful trade so Shareholders learned as unacceptable under California Law.

80. Shareholders relied on Vortis Technology Ltd.'s Articles of Incorporation section (8.1, 9.1, 9.2, 9.5, 9.6) requiring Shareholders' Managing Director [as Defendant Myers was offered]: TO MAKE TENDER TO ALL SHAREHOLDERS IF MADE TO ONE AND TENDER SAME CONDITIONS OF BUY BACK OFFER TENDERED TO MYERS' FOR SHARES at proper valuation. THIS ILLEGAL TENDER CAUSED INSOLVENCY AS INTENDED AND THE REASON no such tender was ever made to shareholders to wit: a) VTL Article 8.1: Burke offered to buy Myers stock for $832,771 (secretly). This is illegal. The USDC agreed but said it's Scottish Venue. Chain of Title looks only at legal issues! b) VTL Article 9.1 Burke failed to provide all shareholders with sale opportunity. This is illegal. c) VTL Article 9.2/9.5 Sales Price to be agreed by all parties. The sale price was made low. d) VTL Article 9.6 Burke failed to offer all holders of equity any notice or offer.

81. It is alleged that the actions of defendants described as specious in U.S. District Courts were committed with intentions to ruin a deal using malicious acts of oppression and false witness

(fraud) as rationalizing the destruction of another man's career and 16 years fleeing from these truths justify punitive awards that allow defendant freedom to server hard of hearing support as damages.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

Against all Defendants

82. JOHNSON realleges and incorporates herein by reference the allegations of paragraphs 1 through 81 of this Complaint as set forth above.

83. An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that plaintiff contends that the actions of defendant Myers before the Scottish Insolvency is a voidable, fraudulent transfer and an imperfect, ill perfected, invalid or improperly executed set of actions between a salesmen of Tyco, the firms supplier who was claiming to be a fiduciary for investors did, in secrecy engage a small time garage shop tech to feel empowered to break the law and cheat investors as they rationalized new realities around "fair and square." Clearly, under California Law and Standards, such actions may be legal elsewhere but not here.

84. Myers' claims he bought "one asset" from Scotland called "Vortis Technology" but he is estopped from claiming interest in the abandoned brand [Vortis] or the 495 Patent interests.

85. The Scottish firm technically owned only two assets; 1) a license from MJI and 2) MJI Stock. MJI owned three assets and under control of the MJI Board of Directors.

86. As there has been no Certification of Dissolution, JOHNSON seeks judicial declaration as necessary and appropriate under the circumstances in order that JOHNSON is able to move forward under his rights and duties as owner of property and recover losses and or damages.

**SECOND CAUSE OF ACTION**

**(Quiet Title)**

Against all Defendants

87. JOHNSON realleges and incorporates herein by reference the allegations of paragraphs 1 through 84 of this Complaint as set forth above.

88. Quiet Title is to counter the claims made of MJI's legal Chain of Title and to its three assets as against clouded and colored claims by MYERS that the Scottish Insolvency transferred any California Corporation's assets. It's not complicated when process rules are followed.

89. Defendant #1 (MJI) requires a Certification of Dissolution and Distribution of remaining assets to pay remaining debtors and owners as required under California Law. Any claims to the contrary have not been perfected. The Scottish Insolvency did not dissolve MJI properly; at all. As such, California Law requires application of its law to its corporation under Internal Affairs.

90. The adverse claims described in the preceding paragraphs, the adverse claims of the successor defendants described in preceding paragraphs, and the adverse claims of the unknown defendants described in preceding paragraphs are all without any right whatever, and no such defendant has any right, title, estate, lien, or interest whatever in the property or any part of it.

91. Plaintiff seeks to quiet title the property claims against all adverse claims of all claimants, known and unknown, as of the date of the filing of this Complaint.

## THIRD CAUSE OF ACTION

**(California Corporations Code Section 8723)**

Against all Defendants

92. JOHNSON realleges and incorporates herein by reference the allegations of paragraphs 1 through 84 of this Complaint as set forth above.

93. MYERS Proof of Claim is false if his statements contained therein are intentionally inaccurate and submitted without good faith as a basis for the claim and are not the result of some mistake or clerical error or inadvertent omission United States v. Connery, 867 F.2d 929, 934 (reh'g denied) (6th Cir. 1989), appeal after remand 911 F.2d 734 (1990).

94. CCC 8723. (a) (1) Causes of action against a dissolved corporation, whether arising before or after the dissolution of the corporation, may be enforced against any of the following: (A) Against the dissolved corporation, to the extent of its undistributed assets, including, without limitation, any insurance assets held by the corporation that may be available to satisfy claims.

95. MYERS is estopped in claiming interest in Vortis Brand Asset due to abandonment.

96. As the brand has value and customers want product JOHNSON is interfered with. (B) If any of the assets of the dissolved corporation have been distributed to other persons, against those persons to the extent of their pro rata share of the claim or to the extent of the corporate assets distributed to them upon dissolution of the corporation, whichever is less.

97. CCC 8723 (Continued): (2) Except as set forth in subdivision (c), all causes of action against a person to whom assets were distributed arising under this section are extinguished unless the claimant commences a proceeding to enforce the cause of action against that person prior to the earlier of (A) The expiration of the statute of limitations applicable to the cause of action. (B) Four years after the effective date of the dissolution of the corporation. (3) As a matter of procedure only, and not for purposes of determining liability, persons to whom assets of a dissolved corporation are distributed may be sued in the name of the corporation upon any cause of action against the corporation. This section does not affect the rights of the corporation or its creditors under Section 2009, or the rights, if any, of creditors under the Uniform Fraudulent Transfer Act (UFTA), which may arise against persons to whom those assets are distributed.

98. CCC 2001. The powers and duties of the directors in this matter are defined under Section 1805 in ordering this commencement of dissolution to liquidate and wind up its affairs while conducting business insofar as necessary for the successful conclusion as planned or the immediate sale to interested and willing, able and ready partners or disposal or winding up. This includes making or carrying out contracts and collect, pay, compromise and settle debts and claims for or against the corporation as well as defend suits brought against the corporation etc. and in general, to make contracts and to do any and all things in the name of the corporation which may be proper or convenient for the purposes of winding up, settling and liquidating the affairs of the corporation. This shall also include California BAR action against MYERS Lawyer for delivering a false and material fact in USDC Hearings.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing, Plaintiff prays for relief as follows:

1. Plaintiff seeks to quiet title to the property, against all adverse claims of all claimants, known and unknown in accordance with Chain of title elements herein.

2. Valuation of Assets to return to third party pre-damaged days of $5,000,000.

4. An order for Defendant Myers to properly acquire the 84.21% equity for cash.

5. Recovery of actual damages from Defendants according to proof at trial,

6. Recovery of restitution from Defendants in an amount to be determined at trial, and/or any interest in money or property, which may have been acquired by means of Defendants' Trade Secret misappropriation, unfair competition and other unlawful acts;

7. Where appropriate under the Cause of Action alleged, an award of punitive damages as measured by Calculous of Negligence for defendants' variation to ISO 9000 Standards;

8. An award of exemplary damages pursuant to California Civil Code from Defendants to reverse the effects of an unlawful trade against millions of hard of hearing;

3. Dissolution of MJI as evidenced by a Certificate from Secretary of State.

9. A temporary restraining order and preliminary and permanent injunctions enjoining and restraining Defendants from engaging in, committing or performing, directly or indirectly, any and all of the following acts;

a. Enjoin Defendants, and all employees, agents, or persons acting for or on behalf of Defendants, from further using, publishing, disclosing, or authorizing others to use, publish, or disclose MJI's Trade Secrets, as defined in this Complaint, as well as any other proprietary information obtained or developed by MJI in the course of its business operations;

b. Prevent Defendants, and all employees, agents, or persons acting for or on behalf of Defendants, from further unlawful solicitation of MJI's (JOHNSON's) contacts, a global customer base, employees and business partners and unlawful interference with MJI's contractual and actual and prospective economically advantageous relationships with business partners and customers;

c. Require Defendants to deliver to MJI or this Court all property, documents, materials or other things in Defendants' possession, which embody, contain,

or reference MJI's confidential, proprietary and/or Trade Secret information; including 1) MYERS Creditors' Claims to the Scottish Courts, 2) BURKE's Managing Director's Report and Excel File and 3) BURKE's documented claims to the Scottish Courts and 4) any disclosures of other deals between BURKE and MYERS and/or with Tyco.

d. Require Defendants to immediately quarantine all copies of any MJI Trade Secrets or confidential or proprietary information that exists on any of the Defendants' server or hard drive (including any home computers or laptop computers of any of the Defendants' employees);

e. Require BURKE/MYERS to immediately advise its employers, employees and associates, in writing, to return, make no further copies, or otherwise examine, use or disseminate MJI's Trade Secrets or confidential or proprietary information and to retract any and all defamations commonly iterated during calls and enquiries about MJI from the press, technical groups or persons, and any and all others seeking truth about MJI.

f. Provide a full accounting of all MJI property in Defendants' possession, custody or control;

g. Allow Plaintiff MJI's computer forensics expert, or a neutral expert appointed by the Court, to inspect, preserve and make copies of Defendants' electronic data relating to MJI, its customers and former employees, including specifically but without limitation e-mail communication between Defendants discussing their plans and scheme to compete unfairly with MJI;

h. Prevent Defendants, and all employees, agents, or persons acting for or on behalf of Defendants, from further making or relating unlawful defamatory comments regarding MJI's products, services and/or capabilities;

i. Require Defendant MYERS to comply with the covenant not to compete in his Shareholder Agreement with MJI.

8. Such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated: February 20th, 2017

Hartnett, Smith & Paetkau

Charles J. Smith, Attorney for
Plaintiff, JAMES R. JOHNSON